## Delaware, Lackawanna & Western
## Railway v. Shuman

*J. Atlee Cryder*, for plaintiff.

*E. Eugene Eves*, for defendants.

KREISHER, P. J., May 11, 1956.—This is an action in equity brought by the Delaware, Lackawanna and Western Railroad Company, a Pennsylvania corporation, plaintiff, against Harold C. Shuman and Marqueen R. Shuman, his wife, defendants..

The case arises by reason of the fact that plaintiff is desirous of enjoining the use of a grade crossing over its right of way by the public at large, and more especially, by defendants. There are four prayers for equitable relief set forth in the complaint as follows:

(1) That it be decreed that the said crossing is no longer necessary or required for the purposes set forth in section 12 of the Act of February 19, 1849, P. L. 79, 67 PS §381.

(2) That it be decreed that defendants and their employes and agents have no longer any right to cross the railroad of plaintiff by means of said crossing or at any other point at grade except at a public highway.

(3) That it be decreed that defendants be enjoined

from exercising any further right over said crossing and from permitting, authorizing or inviting any person or persons to cross their premises and plaintiff's railroad at said crossing.

(4) That it be decreed that said crossing shall be torn out, removed and abandoned and that no further or other crossing shall be constructed, used or maintained across plaintiff's railroad for the accommodation or use of defendants, their heirs or assigns.

Adjudication filed August 31, 1954, made an order dismissing the complaint without prejudice on the ground that the court lacked jurisdiction to grant the relief requested as it was the court's opinion that the matter now rested exclusively in the Public Utility Commission.

From this order an appeal was taken to the Supreme Court of Pensylvania and in an opinion filed June 27, 1955, the aforesaid order of this court was reversed and the case was remanded for further proceedings in accordance with the opinion of the Supreme Court.

Counsel for plaintiffs have now filed a brief together with requests for findings of fact and conclusions of law.

Defendants have failed to make any such requests and rest their case on the brief of counsel as originally filed. From the admissions contained in the pleadings and the testimony taken on the hearing, the court, in accordance with the equity rules, makes the following

### Findings of Fact

1. By virtue of condemnation proceedings to no. 25, May term, 1862, in the Court of Common Pleas of Columbia County, the Lackawanna and Bloomsburg Railroad Company, a corporation of the Commonwealth of Pennsylvania, duly took and appropriated a railroad right of way 130 rods long and 50 feet

wide through lands of Benjamin Hicks, Joseph Hicks, Jesse Hicks, Mordecai Hicks, Rebecca Hicks, Elias Hicks, Ann Eliza Eck, by her guardian Reese Eck, Mary Ann Cryder, Isaac L. Cryder, Mahlon Hicks, Sarah Ann Hughes and Joseph Hughes in Centre Township, Columbia County, described as bounded on the north by lands of Wm. Hoffman, east by lands of D. A. Bowman, south by Susquehanna River and west by lands of Hoffman and Millard. Viewers were appointed to assess the damages for said taking and appropriation of December 6, 1861, and made their report April 19, 1862, awarding the said owners the sum of $300 which was duly paid and the record marked "satisfied". It thereupon constructed and operated its single track railroad upon said right of way.

2. Lackawanna and Bloomsburg Railroad Company was incorporated under and by the Act of April 5, 1852, P. L. 669, to build and construct a railroad, inter alia, in and through Columbia County. The said Lackawanna and Bloomsburg Railroad Company was merged into the Delaware, Lackawanna and Western Railroad Company, plaintiff, by joint agreement dated June 16, 1873, and certificates of merger filed by both companies in the office of the Secretary of the Commonwealth at Harrisburg on June 17, 1873.

3. The Lackawanna and Bloomsburg Railroad Company made a good and sufficient crossing over its railroad to enable the occupants of said lands to cross over its tracks as provided by law, to wit: Section 12 of the Act of February 19, 1849, P. L. 79, 67 PS §381.

4. The said crossing on the right of way of the plaintiff has been and is now maintained and kept in good condition and repair by said railroad company and its successor, plaintiff herein, and prior to the year 1949, said premises were occupied by the owners and their predecessors in title, and the crossing was

used by them for the purposes provided by said section of said act and for no other purposes.

5. Defendants, by deed dated October 17, 1941, and found of record in the office of the Recorder of Deeds of Columbia County, in deed book 119 at page 258, became the owners of a portion of said lands on each side of the road bed of plaintiff served by said crossing, and up until sometime in the year 1949, the exact date plaintiff does not know, continued to use and enjoy said crossing for the purposes provided in said section of said act of assembly.

6. During the year 1949, the Commonwealth of Pennsylvania, through its Department of Highways, completed and opened for the use of the public a new highway which was a reconstruction and relocation of State Highway no. 4, which highway, as relocated, parallels the northern side of plaintiff's railroad, and passes through the aforesaid premises of defendants.

7. During the year 1949, defendants constructed on their premises lying between said reconstructed highway and plaintiff's railroad a gasoline service station for the sale to the public of gasoline, oil, automobile parts and accessories and various other articles of merchandise, where they have since conducted such business.

8. Plaintiff's right of way through the lands of defendants and at said crossing is 50 feet in width. There is a drainage ditch on the northerly side of the right of way, which is approximately four feet wide and four feet in depth. At the crossing said ditch is covered by a wooden cribbing the width of the crossing.

9. In the year 1949 and since said year, defendants have so constructed and maintained said private causeway or driveway as to appear to be a public highway, and have, unlawfully and without warrant or right, permitted, authorized and invited their

customers at said gasoline service station and the traveling public generally to use and travel upon said causeway or driveway or land adjacent thereto and upon and over said crossing, also for the purpose of access of the reconstructed highway and his said place of business, and said causeway, driveway and said crossing is now being used by a great number of persons daily by the unlawful and wrongful actions of defendants, thereby diverting the crossing from the purposes for which it was established and was formerly maintained and used, and as provided in said act of assembly, to the unlawful status of a public or permissive passageway across the right of way of plaintiff.

10. That defendants by deed dated October 27, 1948, and recorded in the office of said recorder of deeds in deed book 144, page 166, became the owners of another tract of land to the east of the premises mentioned in paragraph five of these findings of fact, and immediately adjacent thereto, containing 50.5 acres of land more or less.

11. Because of the said improvements by defendants to their driveway or lane, the crossing is now considerably narrower than the approaches leading to it on either side, and presents a constant danger to travelers thereon as well as to the operations of plaintiff on its railroad. There is a grave and constant danger of serious accidents causing loss of life and property and personal injuries to those using said crossing, increasing plaintiff's burdens beyond those intended by said act of assembly, thus subjecting plaintiff to the possibility of suits at law against it to recover damages for loss of life and property or injuries which may result from said unlawful use of said crossing.

12. There are usually two westbound trains and two eastbound trains running daily over this railroad.

The westbound trains pass this crossing between 2:30 and 4:30 p.m., and between 8:45 and 9:45 p.m. The eastbound trains pass this crossing between 11 p.m. and 12:30 a.m., and between 9:45 and 10:45 a.m. In addition thereto, there are occasional work trains and special trains such as the Presidential Special and Convention Specials.

13. A traffic count of all types of vehicles using this crossing was made during an eight-hour period on August 4, 1952, which showed 67 separate crossings. A traffic count for a six-hour period made on August 7, 1952, showed a total of 51 crossings and a similar count for a six-hour period made August 9, 1952, showed a total of 66 crossings.

14. Prior to 1949, the roadway leading to the crossing and the crossing itself was approximately 10 feet in width. Thereafter, it was improved and widened by defendants so that it is now approximately 20 feet in width.

15. There are three public highway entrances or crossings across plaintiff's railroad tracks that are open and available for the traveling public generally from the old highway, now Pa. Route 4, formerly U. S. Route 11, and the southern line of plaintiff's railroad to the new highway now designated U. S. Route 11. The eastern public highway crossing is an overgrade generally referred to as the viaduct approximately 1,500 feet from defendant's farm buildings. The first public crossing to the west is approximately 800 feet from defendants' buildings. The third public crossing is a much greater distance to the west, being estimated at approximately four miles.

16. Defendants, in addition to being engaged in the gasoline service station business, are also engaged in farming approximately 100 acres of land lying on both sides of plaintiff's right of way. The farmhouse, barn,

implement shed and gasoline storage tanks are located on the southern side of plaintiff's right of way, while the gasoline service station, parking lot and implement storage shed are located on the northern side of plaintiff's right of way. Said buildings on both sides of plaintiff's right of way are in close proximity to said crossing in question.

17. The visibility of operators of motor vehicles is somewhat impaired at this grade crossing and an accident occurred on September 3, 1950, at approximately 10:15 p.m. between an automobile bearing Ohio license plates and a freight train consisting of 12 loaded and 30 empty cars and engine.

18. That defendants in addition to using said crossway for the transportation of their farming implements use the same for hauling gasoline, kerosene and fuel oil from the bulk storage tanks on the southern side of the crossway to the service station on the northern side of the crossway and to distant markets.

19. Plaintiff, recognizing the increased traffic using the grade crossing during the year 1950, for a period of approximately one week caused to be erected a barricade closing the crossing, which barricade was subsequently removed by defendants.

20. Entrances to the grade crossing have been in the past and are presently marked with a sign bearing the words, "Private Crossing", and there are no whistling posts for this crossing erected along plaintiff's right of way.

21. The estimated average rate of speed of the railroad trains passing over this grade crossing is 45 miles per hour, thereby making the same a definite source of danger to the public using this grade crossing.

## Discussion

The Act of February 19, 1849, P. L. 79, sec. 12, 67 PS §381, provides in part as follows:

". . . that, for the accommodation of all persons owning or possessing land through which the said railroad may pass, it shall be the duty of such company to make or cause to be made a good and sufficient causeway or causeways, whenever the same may be necessary to enable the occupant or occupants of said lands to cross or pass over the same, with wagons, carts and implements of husbandry, as occasion may require, and the said causeway or causeways, when so made, shall be maintained and kept in good repair by such company. . . ."

Plaintiff alleges that defendants' right to this crossing no longer exists and therefore, the same should be forthwith abandoned by this court.

In contending that there is no duty on plaintiff railroad to continue to maintain this crossing, plaintiff suggests a number of reasons: First, they contend that the Act of 1849 contemplates a crossing only when the land is used in agricultural pursuits and when there are no other means of access to the land by public crossings in close proximity to the land. They argue that the use of the crossing for the transportation of gasoline and similar products is not covered in the above quoted act of assembly.

They further contend that since the public is making frequent use of the crossing, it is a constant source of danger of accidents and irreparable damage to their rolling stock as well as injury to the public at large and they again follow this reasoning by stating that the public crossings both to the east and to the west of this particular crossing within a mile of each other are sufficient to accommodate not only the public, but defendants, and therefore, the crossing should be torn out.

In the case of Quigg v. Commonwealth, 54 D. & C. 141, on page 144 of the opinion, it is stated:

". . . we cannot agree that the crossings or causeways provided for by the Act of 1849 contemplated a crossing only when the land is used in agricultural pursuits. It may well be that the use of the crossing is confined by the act to some purpose necessary to the working of the land, but that purpose need not necessarily be farming.

"In Pennsylvania Railroad Co. v. Bala Golf Club, 16 Dist. R. 357 (1907), the railroad sought an injunction to prevent golf players from using a crossing in going from one part of the links to another. The injunction was granted as to the players, but the court said in its opinion (page 359) :

" 'In the present case, the land is used as a golf course, and in order to keep the links in proper condition, it is necessary to roll them and cut the grass; consequently, the occupier of the land has a right to take its rollers and mowing machines over the crossing.'

"In Buck Mountain Coal Co. v. Lehigh Coal & Navigation Co., 5 Luz. L. Reg. 51 (1876), the Court of Common Pleas of Luzerne County held that the act applied to coal lands and coal loaded on mine cars.

"In Hespenheide et al. v. King, 48 Pitts. L. J. 242 (1901), the Court of Common Pleas of Allegheny County held that the act was not confined to farm lands.

"We are aware that there is dicta to support the opposite view (see Ferguson's Petition, 238 Pa. 78 (1913), at page 82), but we have seen no case which holds that the act applies only to farm lands."

The testimony in this case clearly shows that defendants are still using the crossing for the purpose of agricultural pursuits on both sides of plaintiff's right of way.

It is true that the implements of husbandry have

changed considerably since 1849 when the act in question was passed and the legislature could not have possibly forseen the use of tractors, combines and other power equipment used today, but it is our opinion that it would be absurd to place such a narrow interpretation upon the act as to hold that defendants could only use the crossing for carts, wagons and implements of husbandry as were contemplated in the year 1849.

The act states that the occupant of the land on both sides of the right of way may use the grade crossing whenever the same may be necessary to enable the occupant to cross or pass over the same as occasion may require and therefore, it seems to us that no additional discussion is necessary to support the conclusion that defendants are still entitled to use this grade crossing to move the farm machinery, irrespective of its modernization, from one side of the right of way to the other side of the right of way as occasion may require. With respect to the use of the causeway by defendants for the movement of petroleum products, a more difficult question arises but we likewise conclude that the term, "wagons", and the term, "carts", are separate and independent from the term, "implements of husbandry", as used in the act.

Defendants are using both sides of the right of way which they own for the purpose of making a livelihood and even though the legislature in 1849 did not forsee the large tank petroleum trucks in use today and did not include such terms in the act specifically, it is our considered opinion that the term, "wagon", and the term, "cart", is sufficiently general and broad so as to include the present day tractor-trailer outfits.

The reasoning set forth in the Luzerne County case which held that the crossing could be used for the transportation of coal likewise applies in the present

action, and therefore, without further discussion, we conclude that defendants have the right to use this crossing for the purpose of getting petroleum products from one side of the right of way to the other side of the right of way so as to make the land owned by them, which is separated by this right of way, productive.

In regard to the general public using this grade crossing, we do not think any discussion is necessary to hold that the general public has no right whatsoever under the above quoted act of assembly to use this crossing and under the circumstances, the court is impelled to enjoin the use of this grade crossing by the public; the difficulty which at once presents itself is the enforcement of the injunction.

We have given considerable thought to the idea of directing plaintiff to erect a barricade which defendants could open as the occasion demanded for their personal use with the requirement that defendants then close the barricade when the purposes for which the same was opened were accomplished.

There is presently a sign at each entrance to the grade crossing notifying the public that this is a private crossing, but we do not believe that any sign would sufficiently deter the public from using this crossing.

Counsel for plaintiff at one time suggested that the duty of policing the crossing and keeping the public from using it rested on defendants, but it seems to us that this would be an impossible task to accomplish and it would be placing much too great a burden on defendants.

### Conclusions of Law

1. The court has jurisdiction of the parties and the subject matter.

2. The causeway is not a public crossing and the public is enjoined from the use of said causeway.

3. Defendants have a right under the Act of 1849 to use said causeway as the occasion may demand for the transportation of their implements of husbandry and their petroleum products.

### Decree

And now, to wit, May 11, 1956, upon consideration of the foregoing case, it is ordered, adjudged and decreed as follows:

1. That a perpetual injunction issue restraining the public at large from using said grade crossing and plaintiff is authorized, in order to effectively enforce said injunction, to erect a barricade or gate on the southern side of said right of way. Said barricade or gate shall be so constructed as to permit defendants, their agents, employes and assigns to open the same as occasion may demand for the transportation of their implements of husbandry and their petroleum products and for any other purposes closely connected with the productivity of defendants' land and defendants, their agents, employes and assigns are directed to close and lock said barricade or gate immediately after each use.

2. That the costs herein shall be paid by plaintiff.

3. That the prothonotary shall enter the foregoing decree nisi and give notice thereof to the parties or their counsel of record, and unless exceptions or objections are filed thereto within 20 days from the date of said notice, the prothonotary is directed to enter the foregoing decree as a final decree.

### Final Decree

And now, June 6, 1956, more than 20 days having passed since notice of service of decree nisi upon the parties or their counsel of record, and no exceptions or objections having been filed thereto, the prothonotary enters the decree nisi as a final decree.